1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NORVEL R. WRIGHT,

11          Plaintiff,                    No. 2:08-cv-01765 GEB KJN PS

12      v.

13   SECRETARY OF DEFENSE ROBERT
     GATES, DEPARTMENT OF DEFENSE
14   AGENCY,

15          Defendant.                    FINDINGS AND RECOMMENDATIONS

16   _____/

17          Presently before the court is defendant's "Motion to Dismiss and/or For Summary

18   Judgment" (Dkt. No. 44), which came before the court for hearing on the undersigned's law and

19   motion calendar on July 8, 2010 (Dkt. No. 48).  Assistant United States Attorney Bobbie J.

20   Montoya appeared on behalf of defendant.  Plaintiff, who is proceeding without counsel,

21   appeared on his own behalf.  Although the undersigned was prepared to rule on defendant's

22   motion at the time of the hearing as a result of plaintiff's fatally flawed written opposition, the

23   undersigned, out of an abundance of caution, provided plaintiff until August 16, 2010, to file a

24   supplemental or revised written opposition to defendant's motion.  (See Order, July 9, 2010, Dkt.

25   No. 49.)  Plaintiff did not file a supplemental or revised written opposition, and the undersigned

26   submitted this matter.  (Order, Aug. 24, 2010, Dkt. No. 50.)  Having reviewed the briefs and

1  record in this case and considered the parties' respective arguments, the undersigned

2  recommends that defendant's Motion to Dismiss and/or For Summary Judgment be granted and

3  that judgment be entered in defendant's favor.

4  I.       BACKGROUND

5              Plaintiff filed his complaint on July 15, 2008, and defendant filed his Motion to

6  Dismiss and/or For Summary Judgment on June 10, 2010, after the parties had conducted

7  discovery in this case.  Defendant's motion includes a statement of undisputed facts.  (Def.'s

8  Memo. In Supp. of Mot. to Dismiss and/or for Summ. J. ("Def.'s Memo.") at 2-7, Dkt. No. 44,

9  Doc. No. 44-2.)  Defendant's statement of undisputed facts ("Def.'s SUF"), with citations to

10  admissible evidence and a declaration in the record, provides the basis for the factual recitation

11  set forth below.  As discussed below, plaintiff filed only a two-page opposition brief that attaches

12  inadmissible or non-relevant evidence, and he did not file a statement of disputed facts or his

13  own statement of undisputed facts.

14       A.       Plaintiff's Complaint

15              Briefly stated, plaintiff is a GS-12 level Administrative Contracting Officer

16  ("ACO"), who works for the Defense Contract Management Agency ("DCMA"), an agency or

17  division within the Department of Defense.  Although his form employment discrimination

18  complaint barely alleges any facts, it alleges that: (1) defendant failed to promote plaintiff;

19  (2) "verbal abuse"; (3) "Retaliation/reprisal"; and (4) "Racism."  (Compl. at 1-2, Dkt. No. 1.)

20  Plaintiff's complaint alleges that the alleged discrimination took place in "2003 / 2008" and that

21  plaintiff filed charges with the Federal Equal Employment Opportunity Commission ("EEOC")

22  or the California Department of Fair Employment and Housing on or about "2006."  (Id. at 2-3.)

23  Plaintiff's complaint also alleges that plaintiff received a Notice-of-Right-to-Sue letter from the

24  EEOC on April 28, 2008.  (Id. at 3.)

25       B.       Undisputed Facts

26              Plaintiff is an African American male who, since approximately 1996, has been

2

1   employed by DCMA as an ACO, at the GS-12 level.  (Def.'s SUF ¶¶ 1-2.)  Plaintiff began his

2   work with DCMA in Sunnyvale, California, and in or around January 2004, plaintiff's office was

3   relocated to Lathrop, California.  (Id. ¶ 2.)  Plaintiff works for DCMA Northern California in the

4   Lathrop office.  (Id.)

5          In or around April 2005, DCMA Northern California was reorganized or realigned

6   and, as a result, plaintiff and Craig Studley were assigned as ACOs to the Navy 2 Team and were

7   supervised by Team Supervisor Janet Lopez.  (Def.'s SUF ¶ 3.)  In or around July 2005, DCMA

8   performed a review of the realignment and determined that the Defense Logistics Agency

9   ("DLA") Team needed to be restructured and created a second DLA team.  (Id. ¶ 4.)  Because the

10  Navy 2 Team had two ACOs, plaintiff was reassigned as the ACO on the new DLA team, and

11  Robert Armstrong was plaintiff's supervisor.  (Id.)

12         In Spring of 2006, management at DCMA Northern California conducted a

13  review of all of its employees' position descriptions to ensure that those descriptions were

14  accurate and reflected current job duties.  (Def.'s SUF ¶ 5.)  Group Chiefs and Team Supervisors

15  were assigned to review the position descriptions and make recommendations about accuracy.

16  (Id. ¶ 6.)  Janet Lopez, who is a Team Supervisor and former ACO, was assigned to review the

17  ACO position descriptions.  (Id. ¶ 7.)

18         At the time of the review, there were eleven ACO positions at job level GS-1102-

19  12.  (Def.'s SUF ¶ 8.)  Lopez determined that two of the ACO position descriptions for the ACO

20  positions held by Craig Studley and John Palmer did not accurately reflect current job duties.

21  (Id.)  The ACO position held by Studley was reclassified from a GS-12 level to GS-13 level

22  because the position imposed additional duties beyond the GS-12 level, and had done so since

23  approximately fiscal year 2002.[1]  (Id. ¶ 9.)  The ACO position held by Palmer was reclassified

24  from a GS-12 level to GS-13 level because the position imposed additional duties beyond the

25  _____

26         [1]  The specific additional duties are recounted in paragraph 9 of defendant's Statement of
    Undisputed facts and need not be recounted in detail here.

3

GS-12 level, and had done so since approximately fiscal year 2003.[2]  (Id. ¶ 10.)  All of the position descriptions were reviewed with assistance from DCMA Headquarters Human Resources Division and Army Civilian Personnel Office Center classification specialists.  (See Def.'s SUF ¶¶ 11-14.)

In or around November 2006, DCMA Northern California management met with Human Resources, senior management from DCMA's Carson Division, and DCMA's Western Headquarters to discuss reclassifications, promotions based on an accretion of duties,[3] and promotions through the competitive process.  (Def.'s SUF ¶ 15.)  Human Resources provided the following criteria to accrete positions:

> (1) the employee will continue to perform the duties of the former position and the new duties assigned; (2) the addition of new duties and responsibilities will not adversely affect the grade of another occupied position (e.g., result in the position being downgraded); (3) the additional duties and responsibilities do not change a former non-supervisory position into a supervisory position; (4) there are no other employees at the same grade level performing the same work in the organization where the employee is located who qualify for the reclassified position; (5) for an employee to be considered for an accretion of duties, the employee must meet all OPM qualification requirements, including time-in-grade; and (6) the employee has performed the higher level duties for a significant period of time.

(Def.'s SUF ¶ 16.)  Ultimately, after review of the review recommendations, some position descriptions remained unchanged, some were updated in minor respects, and others were revised to reflect current duties.  (Id. ¶ 15.)

After a further review process, ten non-competitive promotions for DCMA Northern California were approved.  (See Def.'s SUF ¶¶ 17-20.)  In December 2006, the results of the position description review were announced by email to all DCMA Northern California

---

[2]  The specific additional duties are recounted in paragraph 10 of defendant's Statement of Undisputed facts and need not be recounted in detail here.

[3]  In the context of this case, the phrase "accretion of duties" is used to describe the process of noncompetitively promoting an employee to a higher pay grade because of that employee's performance of duties above his grade for a period of time.

1   employees.  (Id. ¶ 21.)

2          At the time of the position description review process and accretions effectuated

3   in 2006, plaintiff was an ACO assigned to the DLA Team.  (Def.'s SUF ¶ 22.)  At this same

4   time, Craig Studley was the only ACO on the Navy 2 Team, and John Palmer was the only ACO

5   on the TAG Team.  (Id. ¶¶ 23-24.)  Accordingly, under the relevant criteria, it was concluded that

6   plaintiff was not eligible to compete for the GS-13 level positions at issue because, in 2006,

7   plaintiff was in a different organizational unit or team.[4]  (Id. ¶ 25.)

8          On December 7, 2006, plaintiff initiated contact with an EEO counselor.  (Def's

9   SUF ¶ 26.)  On February 7, 2007, plaintiff filed an EEO complaint alleging discrimination based

10  on race, color, age, and sex, as well as retaliation.[5]  (Id. ¶ 27.)  DCMA accepted for investigation

11  plaintiff's claims that when individuals within DCMA Northern California had received non-

12  competitive promotions to GS-13 level positions as a result of an accretion of duties, plaintiff

13  was denied the opportunity to compete for the GS-13 level positions and that management

14  allegedly manipulated the selection process.  (Id.)  On or about July 6, 2007, an EEO Report of

15  Investigation was issued.  (Id. ¶ 28.)

16         On March 31, 2008, the EEOC Administrative Judge, Terrie Brodie, issued a

17  decision adverse to plaintiff.  (Def.'s SUF ¶ 29.)  On April 23, 2008, DCMA issued a final order

18  adopting Administrative Judge Brodie's decision, and, on May 28, 2008, plaintiff appealed the

19  decision to the Office of Federal Operations.  (Id. ¶ 30.)  On March 6, 2009, the Office of Federal

20  Operations affirmed DCMA's decision.  (Id. ¶ 31.)  Meanwhile, on July 15, 2008, plaintiff filed a

21

22         [4]  Although not stated in defendant's Statement of Undisputed Facts, the Declaration of
    Darlene Harris filed in support of defendant's motion states: "A position was only qualified for
23  promotion based on accretion of duties if it was the only such position on the team; if there were
    more than one of the same position on the team, then promotion could only be accomplished
24  through the competitive process."  (Harris Decl. ¶ 16, Dkt. No. 44, Dkt. No. 44-5.)

25         [5]  During the EEO investigation period, plaintiff withdrew his claims premised on age and
    sex discrimination.  (Report of Investigation at 1, Ex. B to Def.'s Mot. to Dismiss and/or for
26  Summ. J.)

1   complaint in this court.

2           C.      Plaintiff's Opposition to the Motion

3           Plaintiff filed only a two-page opposition to defendant's motion.  (Pl.'s Opp'n to

4   Def.'s Mot. to Dismiss and/or For Summ. J. ("Pl.'s Opp'n"), Dkt. No. 46.)  Plaintiff's opposition

5   does not rebut any of defendant's legal arguments.  It also does not specifically dispute any of the

6   facts alleged in defendant's statement of undisputed facts, and does not include a statement of

7   disputed facts.[6]  It only alleges that: (1) AUSA Montoya "is grossly misstating the truth," (2)

8   defendant's statement of undisputed facts "is false," and (3) "[t]here is documented evidence to

9   support the facts."  (Opp'n at 1.)  Plaintiff offers no substantive explanation or documentary

10  support in this regard.

11          Plaintiff's opposition also attaches documents that are either: (1) inadmissible

12  evidence, or (2) immaterial.  The undersigned briefly addresses these documents before turning

13  to the merits of the pending motion and sustains defendant's objections to some of the evidence

14  submitted by plaintiff.[7]  See Fed. R. Civ. P. 56(c)(2).

15          Documents 1 and 2 are settlement communications between Administrative Judge

16  Brodie, and the parties.  Defendant correctly objects to these documents as inadmissible

17  settlement discussions because plaintiff is offering them to substantiate his entitlement to the

18  relief sought, a promotion to GS-13 status.  (Def.'s Reply at 3, Dkt. No. 47.)  These settlement

19

20          [6] Of note, defendant provided plaintiff with a separate "warning" regarding the
    implications of a summary judgment motion and what is required to oppose such a motion.  (Dkt.
21  No. 44, Doc. No. 44-6.)  This notice must be given to a pro se prisoner in connection with a
    motion for summary judgment, see Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en
22  banc), cert. denied, 527 U.S. 1035 (1999), but it is less clear whether the notice is required with
    respect to a non-prisoner pro se party.  In any event, plaintiff was warned of his obligations in
23  opposing a motion for summary judgment imposed by Federal Rule of Civil Procedure 56 and
    Eastern District Local Rule 260.  Nevertheless, plaintiff failed to meet any of these obligations.

24          [7] Plaintiff has not demonstrated that the evidence objected to by defendant is admissible.
    It is plaintiff burden, as the proponent of this evidence, to establish the admissibility of the
25  evidence.  See Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments ("The burden
    is on the proponent to show that the material is admissible as presented or to explain the
26  admissible form that is anticipated.").

                                                    6

1   negotiations are inadmissible to prove liability.  See Fed. R. Evid. 408(a); see also Coleman v.

2   Quaker Oats Co., 232 F.3d 1271, 1291 (9th Cir. 2000) (holding that district court did not abuse

3   its discretion by not admitting post-termination settlement offer); Cassino v. Reichhold Chems.,

4   Inc., 817 F.2d 1338, 1342 (9th Cir. 1987) (noting that in the Age Discrimination in Employment

5   Act context, settlement offers made to employee after termination are not admissible under

6   Federal Rule of Evidence 408).  Accordingly, defendant's objections are sustained as to

7   Documents 1 and 2.  Even if considered, these settlement e-mails consist of the administrative

8   judge's suggestions for how to potentially settle the case, not a statement that plaintiff's case has

9   merit.

10          Document 3 is entitled "Complainant's Rebuttal of Agency's Motion for

11   Summary Judgment" at the administrative level.  This document, which appears to be a brief

12   drafted by plaintiff's "representative" in the EEOC process Jerry Gandara, is of no material

13   import at the summary judgment stage because it is not, nor does it append, evidence upon which

14   plaintiff could rely in opposition to defendant's motion for summary judgment.  Defendant also

15   correctly objects to the consideration of this brief on the grounds that it is not the type of

16   evidence to be considered at the summary judgment stage (Def.'s Reply at 4).[8]  See Fed. R. Civ.

17   P. 56(c)(1).  Accordingly, defendant's objection to document 3 is sustained.

18          Documents 4A and 4B are performance ratings which plaintiff alleges

19   demonstrate that one of his supervisors, Darlene Harris, changed his rating from "Fully

20   Successful" to "Minimally Successful" without his knowledge.  Defendant has not offered any

21

22          [8]  The Ninth Circuit Court of Appeals has held that in the context of a motion for
    summary judgment where the non-moving party is pro se, a court "must consider as evidence in
23   [the pro se party's] opposition to summary judgment all of [the pro se party's] contentions
    offered in motions and pleadings, where such contentions are based on personal knowledge and
24   set forth facts that would be admissible in evidence, and where [the pro se party's] attested under
    penalty of perjury that the contents of the motions or pleadings are true and correct."  Jones v.
25   Blanas, 393 F.3d 918, 923 (9th Cir. 2004).  However, the rebuttal brief in question consists only
    of plaintiff's representative's arguments; it is not based on plaintiff's personal knowledge, is not
26   verified, and is not attested to under penalty of perjury.  Accordingly, this brief does not
    constitute admissible evidence.

7

1 explanation as to why this document creates a genuine dispute of material fact that precludes the

2 grant of summary judgment.

3       Document 5 is a letter to plaintiff from the Assistant United States Attorney who

4 is litigating this case regarding plaintiff's opportunity to review his deposition transcript. This

5 letter is entirely immaterial to the pending motion.

6 II.   <u>LEGAL STANDARDS</u>

7       At the outset, the undersigned makes clear that to the extent that defendant's

8 motion seeks dismissal of plaintiff's claims on grounds not relating to the court's subject matter

9 jurisdiction, the motion will be treated as a motion for summary judgment filed pursuant to

10 Federal Rules of Civil Procedure 56, and will not be reviewed under the standards generally

11 applicable to a motion to dismiss or motion for judgment on the pleadings filed pursuant to

12 Federal Rules of Civil Procedure 12(b)(6) and 12(c), respectively. This distinction is because

13 defendant relies on, and the undersigned has considered, evidence that is either outside of the

14 pleadings or not subject to judicial notice. <u>See</u> Fed. R. Civ. P. 12(d) ("If, on a motion under Rule

15 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court,

16 the motion must be treated as one for summary judgment under Rule 56."); <u>see</u> <u>also</u> <u>Shroyer v.</u>

17 <u>New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1041 n.6 (9th Cir. 2010) (citing <u>Lee v. City</u>

18 <u>of L.A.</u>, 250 F.3d 668, 688 (9th Cir. 2001)); <u>Debry v. Dep't of Homeland Sec.</u>, 688 F. Supp. 2d

19 1103, 1108 (S.D. Cal. 2009).

20     A.   <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

21       A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) or

22 12(h)(3) challenges the court's subject matter jurisdiction. Federal district courts are courts of

23 limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

24 jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

25 contrary affirmatively appears." <u>A-Z Int'l v. Phillips</u>, 323 F.3d 1141, 1145 (9th Cir. 2003)

26 (citations and quotation marks omitted); <u>see also</u> Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  However, the court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.").  "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  Tosco Corp. v. Cmtys. for a Better Env't., 236 F.3d 495, 499 (9th Cir. 2001) (per curiam), abrogated on other grounds by Hertz Corp v. Friend, 130 S. Ct. 1181 (2010); see also Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit 'affidavits or any other evidence properly before the court . . . .  It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation omitted, modification in original)).

B.    Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[9]  A shifting

_____

[9]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1  burden of proof governs motions for summary judgment under Rule 56.  <u>Nursing Home Pension</u>

2  <u>Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir.

3  2010).  Under summary judgment practice, the moving party

4          always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
5          pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
6          demonstrate the absence of a genuine issue of material fact.

7  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

8  "Where the non-moving party bears the burden of proof at trial, the moving party need only

9  prove that there is an absence of evidence to support the non-moving party's case."  <u>In re Oracle</u>

10  <u>Corp. Sec. Litig.</u>, 627 F.3d at 387 (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see</u> <u>also</u> Fed. R. Civ.

11  P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not

12  have the trial burden of production may rely on a showing that a party who does have the trial

13  burden cannot produce admissible evidence to carry its burden as to the fact").

14          If the moving party meets its initial responsibility, the opposing party must

15  establish that a genuine dispute as to a material fact actually exists.  <u>See</u> <u>Matsushita Elec. Indus.</u>

16  <u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the

17  opposing party must demonstrate the existence of a factual dispute that is both material, i.e., it

18  affects the outcome of the claim under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>,

19  477 U.S. 242, 248 (1986); <u>Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.</u>,

20  618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable

21  jury could return a verdict for the nonmoving party,'" <u>FreecycleSunnyvale v. Freecycle Network</u>,

22  626 F.3d 509, 514 (9th Cir. 2010) (quoting <u>Anderson</u>, 477 U.S. at 248).  A party opposing

23  summary judgment must support the assertion that a genuine dispute of material fact exists by:

24  "(A) citing to particular parts of materials in the record, including depositions, documents,

25  electronically stored information, affidavits or declarations, stipulations . . . , admissions,

26  interrogatory answers, or other materials; or (B) showing that the materials cited do not establish

1  the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

2  evidence to support the fact."[10]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However, the opposing party

3  "must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec.

4  Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

5          In resolving a summary judgment motion, the admissible evidence of the

6  opposing party is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable

7  inferences that may be drawn from the facts placed before the court must be viewed in a light

8  most favorable to the opposing party.  See Matsushita, 475 U.S. at 587; In re Oracle Corp. Sec.

9  Litig., 627 F.3d at 387.  However, to demonstrate a genuine factual dispute, the opposing party

10  "must do more than simply show that there is some metaphysical doubt as to the material facts. . .

11  .  Where the record taken as a whole could not lead a rational trier of fact to find for the

12  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

13  omitted).

14  III.    DISCUSSION

15          A.    Defendant is Entitled To Judgment As to Plaintiff's Unexhausted Claims

16          Plaintiff's complaint is sparse with respect to factual allegations such that it is

17  unclear exactly which work-related incidents form the basis of his claims.  Plaintiff alleges a

18  claim for "failure to promote" and "Verbal Abuse, Retaliation/reprisal and Racism."  (Compl. at

19  2.)  However, defendant combed through plaintiff's deposition testimony and extracted

20  allegations made by plaintiff related to several incidents about which plaintiff feels aggrieved,

21  and argues that plaintiff failed to exhaust his administrative remedies as to these incidents.

22  (Def.'s Memo. at 9-10.)  Those incidents relate to the following:

23  ////

---

24
25  [10]  "The court need consider only the cited materials, but may consider other materials in
    the record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to
    support or dispute a fact cannot be presented in a form that would be admissible in evidence."
26  Fed. R. Civ. P. 56(c)(2).

• Alleged verbal abuse by Janet Lopez, plaintiff's Team Supervisor, which allegedly began in or around July 2004, when plaintiff returned to work following carpal tunnel surgery, and ended once plaintiff was transferred from Lopez's team in February 2005.  (See Wright Dep. at 16:21–18:9, 107:5–121:6.)

• Alleged verbal abuse by Darlene Harris in May 2008.  Plaintiff was allegedly put in charge temporarily while his supervisor was out for illness, but Harris curtailed his supervisory role, and did so in front of other employees.  (See Wright Dep. at 140:21–146:22.)

• Alleged discrimination when plaintiff was excluded from meetings that Janet Lopez conducted with Craig Studley, one of the ACOs on a different organizational team who was promoted through an accretion of duties.  (See Wright Dep. at 59:9–60:16.)

• An alleged act of race-based discrimination that relates to plaintiff not being selected to attend continuing education classes when other employees were selected to attend those classes.  (See Wright Dep. at 158:19–159:23, 192:4–193:3, 204:16-22.)

• An alleged act of race-based discrimination that relates to an unfair distribution of workload.  (See Wright Dep. at 193:11-14, 200:1–202:21, 204:23–205:4.)

• An alleged act of reprisal involving plaintiff's travel to Florida to view a satellite launch.  Due to a travel mixup, plaintiff missed one launch, but testified that management corrected the problem and sent him to another launch.  (See Wright Dep. at 149:18–151:10, 158:19–159:2.)

• An alleged act of reprisal involving disciplinary comments because plaintiff did not possess a travel credit card.  (See Wright Dep. at 152:4–154:8, 159:24–160:7.)

• An alleged act of reprisal involving an unfair performance appraisal for the year 2004 by Janet Lopez, as a result of plaintiff's 2001 EEO activity.  (See Wright

1    Dep. at 176:7-17.)

2    •    An alleged act of reprisal involving a downgraded performance appraisal for the

3    year 2004 by Darlene Harris, as a result of plaintiff's 2001 EEO activity.  (See

4    Wright Dep. at 169:5-17, 174:4-15.)

5    Coverage of Title VII of the Civil Rights Act of 1964 is extended to reach federal

6  employees through 42 U.S.C. § 2000e-16, which provides that "all personnel actions affecting

7  federal employees and applicants for federal employment shall be made free from any

8  discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs.

9  Admin., 425 U.S. 820, 829-30 (1976) (citation and quotation marks omitted).  However, an

10  aggrieved federal employee must seek relief from the agency that allegedly discriminated against

11  him or her as a "precondition" to filing an action in federal district court.  Id. at 832.

12    Pursuant to 29 C.F.R. § 1614.105(a)(1), "[a]ggrieved persons who believe they

13  have been discriminated against on the basis of race, color, religion, sex, national origin, age,

14  disability, or genetic information must consult" an EEO counselor prior to filing a complaint in

15  federal court, and such contact must occur "within 45 days of the date of the matter alleged to be

16  discriminatory."  See also, e.g., Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch,

17  572 F.3d 1039, 1043 (9th Cir. 2009).[11]  Under applicable regulations, failure to initiate contact

18  with an EEO counselor within the time limits set forth in section 1614.105 is grounds for

19  dismissal of a complaint, but those time limits are subject to the doctrines of waiver, estoppel,

20  and equitable tolling.  Id. (citing 29 C.F.R. §§ 1614.104(c), 1614.107(a)(2)).  The Ninth Circuit

21  Court of Appeals recently re-affirmed that "although the regulatory pre-filing exhaustion

22  requirement at § 1614.105 'does not carry the full weight of statutory authority' and is not a

23  jurisdictional prerequisite for suit in federal court, we have consistently held that, absent waiver,

24

25    [11]  The aggrieved employee may initiate contact not only with a person with the title "EEO Counselor," but may also initiate contact with "agency officials with EEO counseling responsibilities or a connection to the counseling process," regardless of that agency official's

26  title.  Kraus, 572 F.3d at 1045.

1   estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal

2   employee's discrimination claim' in federal court." Kraus, 572 F.3d at 1043 (quoting Lyons v.

3   England, 307 F.3d 1092, 1105 (9th Cir. 2002)) (modifications in original); accord Cherosky v.

4   Henderson, 330 F.3d 1243, 1245 (9th Cir. 2003).

5          Because plaintiff does not argue that the doctrines of waiver, estoppel, or

6   equitable tolling apply here such that he is excused from compliance with the pre-filing

7   requirements of 29 C.F.R. § 1614.105, the only question presented is whether plaintiff initiated

8   contact with an EEO counselor or other appropriate agency official within 45 days of the date of

9   each alleged discriminatory act.[12]  See Kraus, 572 F.3d at 1043-44.

10          According to plaintiff's deposition testimony, his allegations of verbal abuse by

11   Janet Lopez and Lopez's exclusion of plaintiff from meetings with Craig Studley relate to the

12   time period of July 2004 through February 2005.  As a result, plaintiff would have had to contact

13   an EEO counselor or other appropriate person in April 2005, at the latest.  Plaintiff did not make

14   contact with an EEO counselor until December 7, 2006.  (See Def.'s Memo., Ex. B at 1.)

15   Moreover, plaintiff has not pointed to evidence that he contacted another agency official with

16   EEO counseling duties in a timely fashion.  Accordingly, to the extent that plaintiff's claims stem

17   from those allegations, they are barred by plaintiff's failure to timely contact an EEO counselor.

18          As to the remainder of the allegations that defendant has drawn from plaintiff's

19   deposition testimony, defendant argues that plaintiff did not timely contact an EEO counselor and

20   also did not exhaust those claims in his EEO complaint.  (See Def.'s Memo. at 11-12.)  "The

21   jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and

22   investigation."  Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003).  "[T]he district court has

23   jurisdiction over any charges of discrimination that are 'like or reasonably related to' the

24

25          [12]  As noted above, plaintiff's complaint does not allege specific facts that form the basis
    of his alleged discrimination and retaliation claims.  Plaintiff's written opposition to defendant's
26   motion is similarly unhelpful.

allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." Id. (citation omitted).  The court must construe an EEOC charge with "the utmost liberality." EEOC v. Farmer Bros., Co., 31 F.3d 891, 899 (9th Cir. 1994).

Here, plaintiff did not include any of those remaining alleged incidents in his EEO complaint.  (See Def.'s Memo., Ex. C.)  Moreover, those allegations did not arise in the agency investigation.  (Id., Ex. B).  Plaintiff offers no argument in response to defendant's arguments. Without more, plaintiff's potential claims ferreted out by defendant are barred for want of adequate exhaustion.  Accordingly, defendant is entitled to judgment as to plaintiff's potential claims identified by defendant in plaintiff's deposition testimony.  Because defendant's exhaustion arguments are meritorious, the undersigned does not address defendant's alternative arguments, which assume proper exhaustion.  (See Def.'s Memo. at 13-17.)

B.       Defendant Is Entitled to Judgment On Plaintiff's Failure to Promote Claim

At the heart of plaintiff's complaint is his claim that he was discriminated against based on his race and color because two other GS-12 ACOs—Craig Studley and John Palmer—were promoted to a level of GS-13 based on accretion of duties and thus plaintiff was denied the opportunity to compete for those GS-13 positions.  Defendant moves for summary judgment on this claim on the grounds that plaintiff failed to make out a prima facie case of racial discrimination because plaintiff was not qualified for a promotion based on an accretion of duties or to compete for the positions of the two other ACOs who were promoted.

In opposing a motion for summary judgment as to a Title VII failure to promote claim premised on disparate treatment, "a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 . . . (1973)." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).  Here, plaintiff has made no argument

1  in opposition to the motion for summary judgment and has offered no direct or circumstantial

2  evidence that the decision not to promote him was motivated by a discriminatory reason.

3  Accordingly, the undersigned presumes that plaintiff is proceeding under the <u>McDonnell Douglas</u>

4  burden-shifting framework.

5       To state a prima facie "failure-to-promote" claim under the <u>McDonnell Douglas</u>

6  framework, "a plaintiff must show that (1) [he] belongs to a protected class; (2) [he] applied for

7  and was qualified for the position [he] was denied; (3) [he] was rejected despite [his]

8  qualifications; and (4) the employer filled the position with an employee not of plaintiff's class,

9  or continued to consider other applicants whose qualifications were comparable to plaintiff's

10  after rejecting plaintiff." <u>Dominguez-Curry</u>, 424 F.3d at 1037.  If the plaintiff establishes a prima

11  facie case, it creates a rebuttable presumption that the employer unlawfully discriminated against

12  the plaintiff, and the "burden of production then shifts to the employer to articulate a legitimate,

13  nondiscriminatory reason for its action." <u>Id</u>.  If the employer meets this burden, the "plaintiff

14  then must produce sufficient evidence to raise a genuine issue of material fact as to whether the

15  employer's proffered nondiscriminatory reason is merely a pretext for discrimination." <u>Id</u>.

16  Under the <u>McDonnell Douglas</u> framework, "[t]he burden of persuasion, as opposed to

17  production, however, remains with the plaintiff at all times." <u>Bodett v. CoxCom, Inc.</u>, 366 F.3d

18  736, 743 (9th Cir. 2004).

19       Here, defendant acknowledges that plaintiff is a member of a protected class and

20  that ACOs not of plaintiff's class were promoted to GS-13 level positions based on an accretion

21  of duties.  (Def.'s Memo. at 18.)  However, defendant contends that plaintiff has not shown that

22  he was qualified for a promotion to GS-13.  Defendant makes two arguments.  First, defendant

23  argues that "[p]laintiff fails to show that he performed additional duties and responsibilities that

24  justified a reclassification or non-competitive promotion of his position to the GS-13 level." (<u>Id</u>.)

25  Defendant argues that Craig Studley and John Palmer, the promoted ACOs, were both

26  performing specific, higher-level duties and were the only ACOs performing those tasks at the

1  time of their non-competitive promotions.  Second, defendant argues that Studley and Palmer

2  were properly promoted through an accretion of duties, and a competitive process was not

3  required because they were the only GS-12 ACOs in their respective organizational units at the

4  time of the promotions.  (Id. at 19; see also Harris Decl. ¶¶ 24-27.)

5         Plaintiff has not presented any legal argument or admissible evidence in response

6  to defendant's argument that plaintiff was not qualified for a promotion.  Plaintiff appears to rely

7  on inadmissible emails that pertain to settlement negotiations to substantiate that he was qualified

8  for a promotion.  (Opp'n, Dkt. No. 46 at 5-8.)  However, as discussed above, those e-mails are

9  inadmissible evidence.  Moreover, the e-mails only demonstrate that Administrative Judge

10 Brodie thought that a temporary promotion to GS-13 and priority consideration going forward

11 might resolve the dispute, not that plaintiff was qualified for a promotion.  The e-mails indicate

12 that the government rejected this proposal, and Administrative Judge Brodie ultimately ruled

13 against plaintiff.

14        Plaintiff also appears to rely on a brief filed during the EEO administrative

15 process, which alleges that plaintiff was performing three times the amount of contract

16 administration that Studley and Palmer were performing.  (Opp'n, Dkt. No. 46 at 11.)  Even

17 assuming this brief constitutes evidence sufficient to withstand a motion for summary

18 judgment—which it does not—it does not suggest that plaintiff was performing work beyond a

19 GS-12 level.  Moreover, defendant submitted an undisputed supplemental declaration of Darlene

20 Harris, which declares that plaintiff was only performing work at a GS-12 level and below.

21 (Harris Suppl. Decl. ¶ 5, Dkt. No. 47, Doc. No. 47-1.)

22        As to defendant's first argument, plaintiff simply has not provided any evidence to

23 create a genuine dispute of material fact regarding whether he was qualified for the promotion he

24 contends he was entitled to receive.  Accordingly, his failure-to-promote claim fails, and

25 defendant is entitled to summary judgment on that claim.

26        Defendant's second argument—that a promotion through accretion of duties was

1  appropriate because Studley and Palmer were the only GS-12 ACOs in their respective

2  organizational units—does not appear to be relevant to defendant's argument that plaintiff failed

3  to establish a prima facie case of discrimination.  This argument does not relate to whether

4  plaintiff was qualified and denied a promotion despite his qualification.  It is, however, relevant

5  to defendant's argument that assuming plaintiff established a prima facie case, defendant had a

6  legitimate, non-discriminatory reason for not promoting plaintiff and not allowing plaintiff to

7  compete for a GS-13 promotion.  Defendant appears to be arguing that, under the accretion

8  criteria, the agency did not need to consider plaintiff for, or allow him to compete for, the GS-13

9  positions because Studley and Palmer were the only ACOs on their respective teams.  The agency

10  was permitted to non-competitively promote Studley and Palmer.  Plaintiff offers no argument in

11  his opposition brief on this point.  Although defendant's argument is well-taken, the undersigned

12  need not reach this argument because, as discussed above, plaintiff has not provided evidence

13  that substantiates a prima facie case.  Accordingly, defendant's motion for summary judgment

14  should be granted.

15      C.      Plaintiff's Title VII Retaliation Claim

16          Plaintiff's complaint also alleges, however conclusorily, a claim for

17  "Retaliation/reprisal."  (Compl. at 2.)  Plaintiff's EEO complaint alleges that plaintiff was

18  retaliated against in response to his prior EEO activity, which took place in 2001 and was settled

19  in 2002.[13]  (See Def.'s Memo., Ex. B at 1-2; Def.'s SUF ¶ 32.)  Plaintiff alleges that he was

20  retaliated against by being denied an opportunity to compete for the GS-13 ACO positions in

21  2006.  (See id., Ex. B at 1, 6, and Ex. C at 2-3.)  Defendant moves for summary judgment on the

22  grounds that plaintiff has not established a prima facie case of retaliation.  (Def.'s Memo. at 19-

23  20.)

24

25      [13]  Plaintiff previously filed an EEO claim in March 2001 that was settled in or around
    August 2002.  (Def.'s SUF ¶ 32.)  That prior claim is not directly related to the present
26  underlying claims, except as it relates to plaintiff's claim of retaliation.

1    "Title VII prohibits, among other things, retaliation against an employee for

2    making a charge or otherwise participating in a Title VII proceeding." Nilsson v. City of Mesa,

3    503 F.3d 947, 953 (9th Cir. 2007) (citing 42 U.S.C. § 2000e-3(a)); see also Davis v. Team Elec.

4    Co., 520 F.3d 1080, 1093 (9th Cir. 2008) ("Employers may not retaliate against employees who

5    have 'opposed any practice made an unlawful employment practice' by Title VII.") (quoting 42

6    U.S.C. § 2000e-3(a)).  "To establish a claim of retaliation, a plaintiff must prove that (1) the

7    plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action,

8    and (3) there was a causal link between the plaintiff's protected activity and the adverse

9    employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007); accord Davis,

10   520 F.3d at 1093-94.  If the plaintiff establishes a prima facie case of retaliation, "the burden

11   shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions; at that point,

12   the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation."

13   Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

14          Here, defendant concedes that plaintiff engaged in protected activity by filing his

15   EEO claim in 2001.  (See Def.'s Memo. at 20.)  He also concedes that it is "arguable" that

16   plaintiff's claim of non-promotion could be construed as a materially adverse employment

17   action.  (Id.)  However, defendant challenges plaintiff's retaliation claim on the ground that

18   plaintiff has produced no evidence of a causal connection between his EEO activity in 2001 and

19   the claim of failure to promote in 2006 and, as a result, plaintiff cannot establish a prima facie

20   case of retaliation.

21          Plaintiff's written opposition does not address defendant's argument.

22   Furthermore, plaintiff has provided no evidence or argument establishing causation between his

23   protected EEO activity in 2001 and being denied the opportunity to compete for GS-13 level

24   ACO positions in 2006.  Thus, plaintiff is apparently proceeding on a theory of causation based

25   on timing alone, which is a permissible theory.  See, e.g., Davis, 520 F.3d at 1094 ("We have

26   held that causation can be inferred from timing alone where an adverse employment action

                                                    19

1  follows on the heels of protected activity" (citation and quotation marks omitted).).  However,

2  the temporal proximity between an employer's knowledge of protected activity and an adverse

3  employment action must be "very close" to support a theory of causation based on timing alone.

4  See, e.g., Clark County Sch. Dis. v. Breeden, 532 U.S. 268, 273 (2001) (holding that an adverse

5  employment action taken 20 months after the protected conduct "suggests, by itself, no causality

6  at all").  The Ninth Circuit Court of Appeals has held that a nine-month gap between protected

7  activity and alleged retaliatory action is too long to support a finding of causation based on

8  timing alone.  See Manatt v. Bank of Am., 339 F.3d 792, 802 (9th Cir. 2003); see also Davis, 520

9  F.3d at 1094 ("We have held that an eighteen-month gap is too long to support a finding of

10  causation based on timing alone.") (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,

11  1064 (9th Cir. 2002)).  Here, the gap between plaintiff's EEO activity and the alleged retaliatory

12  act is on the order is approximately four to five years.  Accordingly, plaintiff has not met his

13  burden to establish a prima facie case of retaliation, and defendant is entitled to summary

14  judgment on plaintiff's retaliation claim.[14]

15  IV.   CONCLUSION

16         For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

17         1.     Defendant's "Motion to Dismiss and/or For Summary Judgment" (Dkt.

18  No. 44) be granted.

19         2.     Judgment be entered in defendant's favor.

20         3.     This case be closed and all dates in this case be vacated.

21         These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

23  days after being served with these findings and recommendations, any party may file written

---

24
25     [14]  Because plaintiff has not established a prima facie case of retaliation, the undersigned
       need not address defendant's additional argument that defendant had legitimate, non-
       discriminatory reasons for its decisions that plaintiff did not, and apparently cannot, rebut.
26     (Def.'s Memo. at 20-23.)

1  objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

2  Such a document should be captioned "Objections to Magistrate Judge's Findings and

3  Recommendations."  Any response to the objections shall be filed with the court and served on

4  all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

5  Failure to file objections within the specified time may waive the right to appeal the District

6  Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

7  1153, 1156-57 (9th Cir. 1991).

8            IT IS SO RECOMMENDED.

9  DATED:  January 25, 2011

10

11

12  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26